UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK WELLS,<br><br>          Plaintiff,<br><br>    v.<br><br>ROSA GONZALES,<br><br>          Defendant. | Case No. 1:17-cv-01240-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED AGAINST DEFENDANT ROSA GONZALES ON PLAINTIFF'S CLAIMS FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION, VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000, RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, UNREASONABLE SEARCHES IN VIOLATION OF THE FOURTH AMENDMENT, AND VIOLATION OF THE BANE ACT, AND THAT PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BE DISMISSED WITH PREJUDICE<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

**I.    BACKGROUND**

Frank Wells ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint

commencing this action on September 15, 2017 (ECF No. 1), which is now before the Court for screening.

For the reasons described below, the Court recommends finding that Plaintiff has stated cognizable claims against Defendant Gonzales for violation of Plaintiff's First Amendment right to free exercise of religion, violation of the Religious Land Use and Institutionalized Persons Act of 2000, retaliation in violation of the First Amendment, unreasonable searches in violation of the Fourth Amendment, and violation of the Bane Act. The Court also recommends dismissing Plaintiff's claim for intentional infliction of emotional distress.

Plaintiff may file objections to these findings and recommendations within 21 days from the date of service of this order.

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting

this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff is an inmate at Valley State Prison ("VSP").

On November 16, 2016, Defendant Gonzales, a correctional officer, confiscated from the Main Library, where Plaintiff works, a native totem of spiritual significance belonging to Plaintiff, which was on display for Native Heritage Month. She physically handled the artifact in a disrespectful manner, not in accordance with native traditions and practices. Plaintiff approached his supervisor, who told him to speak directly with Defendant and her partner, Correctional Officer Lang. When Plaintiff discussed the issue with Correctional Officer Lang, he was told that he needed to speak with Gonzales because she was the one who "took your Bear." Plaintiff then tried to resolve the issue through the Men's Advisory Council.

When Plaintiff finally attempted to resolve the issue with Gonzales, she became immediately agitated and combative. She eventually asked Plaintiff "what the (expletive) do you want, and hurry up I ain't got all (expletive) day."

Gonzales then ordered Plaintiff to "assume the position and proceeded to perform a body search of Plaintiff aggressively." Gonzales then ordered Plaintiff to stand with hands behind his back and again asked what Plaintiff wanted. Plaintiff requested the return of the native artifact because it was a religiously significant item as identified in the Department Operations Manual and the California Code of Regulations Title 15. Plaintiff goes on to describe more of the interaction, which ended in Gonzales threatening Plaintiff with a write-up for manipulation of staff. Plaintiff then said that he would be utilizing the appeals system to file a staff misconduct complaint. Gonzeles responded "Are you threatening me? I'll write you

3

up right now." Plaintiff asked for a "confiscation slip pursuant to policy identified within the CCR Title 15 § 3287(a)(2)," but Gonzales refused to provide one.

Plaintiff again told Gonzales that he intended to exercise his right to file a complaint against Gonzales. Gonzales replied "Do what you're [] gonna do I don't give a (expletive) cause you know I'll do what I gotta do."

Plaintiff returned to his workplace and began writing a staff misconduct complaint using form 602.

A few minutes later, Gonzales entered Plaintiff's workplace and "loudly and aggressively began intimidating and threatening co-workers with punitive searches saying 'This (expletive) area is a (expletive) mess! I will be back in two (2) weeks and I'm gonna tear this (expletive) place up.'" Plaintiff was afraid that Gonzales was going to do "something bad against him." Plaintiff feared filing the complaint against Gonzales as a result of her actions. Nevertheless, Plaintiff continued to prepare his grievance.

On November 21, 2016, Plaintiff was told to go to the Main Yard gate because Gonzales wanted to speak with him. Gonzales was waiting for Plaintiff and aggressively ordered Plaintiff to "assume the position." Plaintiff was searched by Gonzales. Then Gonzales ordered Plaintiff to stand with his hands behind his back. Plaintiff was afraid and anxious. Gonzales then told Plaintiff to "drop the issue" or she would write Plaintiff up for manipulation of staff. Plaintiff responded "I requested formally through the proper procedure (form 22 inmate request) for a confiscation slip as required and that I be allowed to determine the disposition." Gonzales yelled at Plaintiff to "drop the issue." Plaintiff interpreted this comment as a threat. Plaintiff told Gonzales that he had submitted the staff complaint and that he thought Gonzales was now retaliating against him.

Approximately seven days later, Plaintiff was summoned to C-facility Program Office by Captain Flores. Captain Flores had the staff complaint and told Plaintiff "Don't you think this is a battle that you should [sic] be choosing?" Captain Flores also told Plaintiff that she knew about Gonzales' aggressive nature that that Plaintiff should just accept it.

On January 25, 2017, other Native Inmates complained about Gonzales for desecrating

a Sacred Purification Ceremony. Plaintiff alleges this was the beginning of a pattern of harassment "directed at Plaintiff's Native Culture, Spirituality, Artifacts, and Community." Plaintiff attempted to file a grievance, but it was cancelled because he was not present during the incident he was complaining about. Gonzales then "began maliciously accosting Natives wearing traditional regalia to wit Beaded Necklaces, Headbands, Wristbands, etc… and confiscating said artifacts which are authorized and protected Constitutionally." Plaintiff describes multiple other incidents of confiscation of religious artifacts, harassment of Natives and other religions, and retaliatory actions, including the confiscating of Eagle Feathers held by another inmate.

Plaintiff states that he "now suffers severe stress and fear as a result of the Defendant[']s direct actions and no longer wears or displays his Native regalia (necklaces, medicine bag, wristbands, headwear) in his traditional way for fear that Defendant will confiscate Spiritual belongings. Plaintiff feels deprived of his right to exercise his religious practices."

**IV. ANALYSIS OF CLAIMS**

**a. Section 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979)*; *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008).

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal,* 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978).

### b. First Amendment Right to Free Exercise of Religion

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. Const. amend I. The United States Court of Appeals for the Ninth Circuit summarizes the application of the Free Exercise Clause in a state prison context as follows:

> The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8, 67 S.Ct. 504, 91 L.Ed. 711 (1947), "prohibits government from making a law 'prohibiting the free exercise [of religion].' " *Cruz v. Beto*, 405 U.S. 319, 322,

92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam) (alteration in original). The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration. *O'Lone*, 482 U.S. at 348, 107 S.Ct. 2400.

*Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

"To prevail on their Free Exercise claim, Plaintiffs must allege facts plausibly showing that the government denied them 'a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Id.* (citing *Cruz*, 405 U.S. at 322, 92 S.Ct. 1079). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir. 1994); *see also Shakur,* 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct that he sincerely believes is consistent with his faith. *Shakur,* 514 F.3d at 884–85.

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (internal quotations and citation omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation and internal quotation marks omitted).

Plaintiff has alleged facts that state a cognizable claim for violation of his First Amendment rights to free exercise of his religion. Plaintiff has sufficiently alleged that he has a sincerely held belief in Native religion, and that Defendant Gonzales substantially burdened

7

his exercise of religion by repeatedly confiscating Native artifacts that inmates were allowed to have (including one of Plaintiff's Native artifacts).

### c. RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). Plaintiff must allege facts demonstrating that defendant substantially burdened the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged upon, and then must ask whether the prison regulation or action at issue "substantially burdens" that religious exercise. *Greene v. Solano County Jail*, 513 F.3d 982, 987 (9th Cir. 2008).

"RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise.'" *Hartmann*, 707 F.3d at 1124–25 (citing *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)." *Int'l Church of Foursquare Gospel*, 673 F.3d at 1067 (citing *Guru Nanak*, 456 F.3d at 988). "In the context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial

pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hartmann*, 707 F.3d at 1124–25 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

Plaintiff has stated a cognizable claim against Defendant Gonzales for violation of RLUIPA. He has alleged that Defendant Gonzales substantially burdened his religious exercise by confiscating religious artifacts and pressuring Plaintiff not to engage in religious displays.

### d. Retaliation in Violation of the First Amendment

Allegations of retaliation against a prisoner for exercising his First Amendment rights may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has stated cognizable First Amendment claims for retaliation against Defendant Gonzales. Plaintiff alleged that Defendant Gonzales took multiple adverse actions against him for pursuing grievances protected by the First Amendment, including subjecting him to additional searches without justification, threatening to write him up, and removing additional religious artifacts.

### e. Fourth Amendment Unreasonable Search and Seizure

For purposes of the Fourth Amendment, "[s]earches of prisoners must be reasonable to be constitutional. *Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and

the place in which it is conducted." *Id.* (*quoting Bell v. Wolfish*, 441 U.S. 520, 559, (1979)).

Plaintiff has stated a cognizable claim under the Fourth Amendment by alleging the Defendant Gonzales repeatedly searched Plaintiff without any justification merely as a form of harassment. The Court is not deciding as a matter of law that the searches as described were unconstitutional, but that the facts alleged raise a cognizable claim regarding the reasonableness of the searches.

### f. Bane Act

"California's Bane [Civil Rights] Act provides a private right of action under state law for damages and injunctive relief where a person 'interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state.'" *Green v. City and County of San Francisco*, 751 F.3d 1039, 1044 n.4 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1(a)). To prevail on a Bane Act claim, a plaintiff must show "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998); *see also Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004) (the provisions of § 52.1 do not extend to "ordinary tort actions" but "are limited to threats, intimidation or coercion that interfere with a constitutional or statutory right").

Plaintiff has stated cognizable claims against Defendant Gonzalez for violation of the Bane Act. Plaintiff alleges that Defendant Gonzales intimidated and coerced Plaintiff in order to interfere with his First Amendment right to file grievances against Gonzalez, including engaging in searches without justification, threatening to "write him up," and confiscating other religious artifacts.

### g. Intentional Infliction of Emotional Distress

Finally, Plaintiff alleges a claim for intentional infliction of emotional distress. The elements of that tort under California law are as follows:

> A cause of action for intentional infliction of emotional distress exists when there has been (1) extreme and outrageous conduct by the defendant with the

10

intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff has suffered severe or extreme emotional distress; and (3) the defendant's outrageous conduct was the actual and proximate causation of the emotional distress. (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963; \*\*257 *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550, 863 P.2d 795.) "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.] And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes*, at pp. 1050-1051, 95 Cal.Rptr.3d 636, 209 P.3d 963.)

"Liability for intentional infliction of emotional distress ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [Citation.]' [Citations].... [¶] With respect to the requirement that a plaintiff show severe emotional distress, [the Supreme Court] has set a high bar. 'Severe emotional distress means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' " (*Hughes v. Pair*, *supra*, 46 Cal.4th at p. 1051, 95 Cal.Rptr.3d 636, 209 P.3d 963.) It is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. (*Chang v. Lederman* (2009) 172 Cal.App.4th 67, 87, 90 Cal.Rptr.3d 758; *Fowler v. Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44, 241 Cal.Rptr. 539.)

. . . . As summarized in comment d to the Restatement Second of Torts, section 46, cited in *Hughes v. Pair*, *supra*, 46 Cal.4th at page 1051, 95 Cal.Rptr.3d 636, 209 P.3d 963 and many other appellate decisions considering this element of the tort, "It has not been enough that the defendant has acted with an intent to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Cf. *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 954, 151 Cal.Rptr.3d 589 [allegation that employee had falsely accused fellow employee of committing a sexual assault in a report to a nurse and the employer's human resources department insufficient to constitute extreme and outrageous conduct].)

*Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1265–1266 (2017), *as modified* (Apr. 19, 2017), *review denied* (June 28, 2017).

Plaintiff has failed to state a claim for intentional infliction of emotional distress under these legal standards. Defendant Gonzales' conduct, even if true and construed in favor of the

Plaintiff, is not so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and be utterly intolerable in a civilized society. The Court recommends dismissing this claim.

## V. CONCLUSION AND RECOMMENDATION

The Court has screened the complaint, and finds that it states cognizable claims against Defendant Rosa Gonzales, a correctional officer at Valley State Prison, for violation of Plaintiff's First Amendment right to free exercise of religion, violation of the Religious Land Use and Institutionalized Persons Act of 2000, retaliation in violation of the First Amendment, unreasonable searches in violation of the Fourth Amendment, and violation of the Bane Act. The Court recommends dismissing Plaintiff's claim for intentional infliction of emotional distress.

The Court does not recommend granting leave to amend. The Court is recommending that multiple claims be allowed to proceed. Moreover, it does not appear that the defects in Plaintiff's claim for intentional infliction of emotional distress can be cured by additional factual allegations. Plaintiff has already clearly stated the facts regarding the underlying conduct, and the Court finds that such conduct is not so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and be utterly intolerable in a civilized society.

Therefore, it is HEREBY RECOMMENDED that Plaintiff's complaint (ECF No. 1) be allowed to proceed against Defendant Rosa Gonzales on Plaintiff's claims for violation of Plaintiff's First Amendment right to free exercise of religion, violation of the Religious Land Use and Institutionalized Persons Act of 2000, retaliation in violation of the First Amendment, unreasonable searches in violation of the Fourth Amendment, and violation of the Bane Act, and that Plaintiff's claim for intentional infliction of emotional distress be dismissed with prejudice for a failure to state a claim.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff

may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 6, 2018**             /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE