UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK WELLS,<br><br>    Plaintiff,<br><br>v.<br><br>ROSA GONZALES,<br><br>    Defendant. | Case No. 1:17-cv-01240-DAD-EPG (PC)<br><br>ORDER RE: PLAINTIFF'S MOTION TO COMPEL RESPONSE TO ADMISSIONS<br><br>(ECF. NO. 46)<br><br>ORDER RE: PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS<br><br>(ECF. NO. 47)<br><br>ORDER RE: OFFICIAL INFORMATION PRIVILEGE |

    Frank Wells ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action.

    "This action now proceeds against defendant Rosa Gonzales on plaintiff's claims for violation of his First Amendment right to free exercise of religion, violation of the Religious Land Use and Institutionalized Persons Act of 2000, retaliation in violation of the First Amendment, unreasonable searches in violation of the Fourth Amendment, and violation of California's Bane Act." (ECF No. 10, at p. 2).

    Before this Court is Defendant's assertion of the official information privilege and confidentiality regarding certain documents. Also before the Court are Plaintiff's Motion to Compel Response to Admissions (ECF No. 46), and Plaintiff's Motion to Compel Production of Documents, (ECF No. 47).

1

**I.      Background**

      **a.  Defendant's Assertion of Official Information Privilege**

In the Court's scheduling order, the Court ordered that, "If any party or third party withholds a document on the basis of privilege, that party or third party shall provide a privilege log to the requesting party identifying the date, author, recipients, general subject matter, and basis of the privilege within **thirty (30) days** after the date that responses are due. The privilege log shall also be filed with the Court.  Failure to provide a privilege log within this time shall result in a waiver of the privilege."  (ECF No. 24, at p. 2).

On the day of the discovery and status conference, Defendant filed two privilege logs with the Court.  (ECF Nos. 38, 39).  The first privilege log revealed that Defendant withheld as privileged "All Staff Misconduct reports filed against Defendant from 2013-Present," "All 602 Grievances/Appeals filed against Defendant from 2013-Present," "Copies of all incident reports involving Defendant to include but not limited to any assault upon Defendant and/or claims of assault or excessive use of force committed by Defendant," "Copies of all disciplinary actions and/or negative reports with Defendant's employee file as a CDCR employee," "All rules Violation reports (115 RVR) filed by Defendant beginning from hiring date to present," "All Staff Misconduct complaints specific to Defendant confiscations of inmate property from 2013-Present," and "All confiscation slips submitted by Defendant from 2013-Present."  (ECF No. 38).  Defendant asserted the same basis for each withholding: "Official-information privilege, confidential and private information that could jeopardize the safety, security, and privacy of the prison, staff or inmates if disclosed.  (Cal. Code Regs., tit. 15, §§ 3321, 3370, and 3450(d)); Civil Code §§ 1798.24 and 1798.40; California Penal Code §§ 832.7 and 832.8; California Evidence Code § 1040, et. seq., § 1043; unwarranted invasion of personal privacy, Cal. Const. Art. I, § 1, (Gov. Code, § 6254); information irrelevant to any party's claim or defense."  (ECF No. 38).

The second privilege log revealed that Defendant withheld as privileged "Staff Misconduct reports filed against Defendant from Dates as Follows November 2017 to present specific to reference of: a) Confiscations[,] b) Illegal searches[,] c) Retaliations[,] d) Religious

rights violations/claims[,] e) Conduct beyond scope of duty[, and] f) Procedural violations" regarding fourteen staff misconduct reports; "602 grievances which were filed as Staff misconducts and charged to Appeal issue from November 2017 to Present specifically referencing: a) Confiscations[,] b) Procedural violations[,] c) Illegal searches[,] d) Retaliation/Retaliatory conduct[,] e) Religious Rights Claims/violations[, and] f) Conduct beyond scope of duty" regarding fourteen 602 grievances; "Incident reports (CDCR Form 837s) from November 2017 to present specific to Defendant;" and "Confiscation slips written/issued by Defendant from November 2017 to present." (ECF No. 39). Defendant asserted the same bases for withholding documents in this privilege log as she did in the first privilege log. (Id.).

Both privilege logs included a declaration from V. Soza, the Litigation Coordinator at Valley State Prison (VSP). Soza declares that he has reviewed all of the documents withheld as privileged and concluded that disclosure of any of them "could endanger the safety or staff and inmates, and potentially jeopardize the security of the institution." (ECF No. 39, at p. 8). Soza's basis for this conclusion is as follows:

> When an inmate alleges staff misconduct by an employee and the appeal has been categorized as a staff complaint, a confidential investigation into the matter commences. Pursuant to title 15 of the California Code of Regulations, § 3084.9(i)(3)(B)(1), a confidential report summarizing the review is kept strictly confidential, subject to limited exceptions. By maintaining the confidentiality of the investigation, witnesses are encouraged to make truthful statements, and investigators, who are assured of the confidential nature of the proceedings, are encouraged to accurately report their findings. Maintaining the confidentiality of the investigation also protects the privacy of inmate informants. If confidential investigations were disclosed to inmates, the institution would not be able to control the confidential and privileged nature of these types of inquiries, which would jeopardize the safety and security of the institution. For example, inmate witnesses might refuse to cooperate for fear that their statements may be revealed to other inmates, which could put them in danger of being labeled a "snitch" and/or threaten their safety. Additionally, confidential investigation reports could educate inmates about CDCR's investigatory techniques and could potentially hamper or impede future investigations. Thus, the institution's ability to conduct accurate and reliable inquiries into allegations of inmate and/or staff misconduct could be compromised because of the lack of cooperation and candor from witnesses.

3

(ECF No. 38, at pgs. 8-9). Notably, V. Soza fails to distinguish among any of the documents, or identify any specific safety concern by any given document.

The Court held a discovery status conference on June 19, 2019. (ECF No. 40). Following that conference, and based on discussions with the parties, the Court ordered Defendant to submit a copy of all documents withheld under the official information privilege to the Court for *in camera* review. (ECF No. 41, at p. 1). The Court also gave each party until July 3, 2019 to file a brief regarding whether the documents are entitled to protection under the official information privilege. (Id.).

Pursuant the Court's order, Defendant submitted 1,213 pages of documents to the Court for *in camera* review. Defendant also filed a brief regarding her claim of privilege. (ECF No. 43).

### b. Plaintiff's Motion to Compel Response to Admissions

Additionally, before this Court is Plaintiff's motion to compel responses to his requests for admission. (ECF No. 46). Based on the Court's review of Defendant's responses to the requests for admission, it appears that Defendant provided a substantive response to many of the requests for admission, notwithstanding her objections. It appears that Defendant did not provide full responses to the following requests:

Request No. 4: I do not acknowledge Native American Religious Practice as a legitimate religion.

Request No. 10: I have stated that Native American Inmates "Better be afraid of me."

Additionally, Defendant provided a limited admission to Request No. 8: I have been suspended from duty for misconduct more than once.

### c. Defendant's Opposition to Motion to Compel RFA Responses

Defendant's opposition only specifically addresses Request No. 10. Defendant recites its objections "that the request was vague, overbroad, and ambiguous," and that "there is no time period indicated as to when the statement was made, or to whom the statement was made." (ECF No. 50, at p. 3). "The information solicited was insufficient to enable Defendant to admit or deny the requested matter." (Id.). Defendant states that she will supplement her

response if Plaintiff narrows the scope to "while [Defendant was] on duty between November 2016 to present," which Plaintiff stated he would do in his motion to compel. (Id.).

### d. Plaintiff's Motion to Compel Production of Documents

Plaintiff also filed a motion to compel Defendant to produce documents. (ECF No. 47). Plaintiff states that "Defendant has failed to submit any documentation requested by Plaintiff." (ECF No. 47, at p. 4). Plaintiff then moved to compel production of documents in the following categories:

1. Staff misconduct reports filed against Defendant from November 2017 to present specific to reference of[:]
   a. Confiscations
   b. Illegal searches (performed by Defendant)
   c. Retaliations
   d. Religious Rights violations/claims
   e. Conduct beyond scope of duty
   f. Procedural violations
2. 602 Grievances which were filed as Staff Misconducts and changed to Appeal Issue from November 2017 to Present: specifically referring to:
   (a-f) listed above
3. Current lawsuit case numbers filed against Defendant and causes of action.
4. Incident reports filed from November 2017 to present specifically involving Defendant.
5. Confiscation slips/receipts authored by defendant from November 2017 to Present.
6. Complete list of online sites which auction/sell items that Defendant has utilized to sell items online from November 2017 to Present.
7. Detailed and itemized list of items sold by Defendant online to include online photo[]s of items put up for sale.

8. Complete itemized list of account activities of online auction/sell sites to include but not limited to amount of money procured by Defendant from November 2017 to Present.

### e. Defendant's Opposition to Motion to Compel Production of Documents

In Defendant's opposition to the motion to compel, Defendant does not dispute that she did not produce any documents in response to the requests for production of documents. (ECF No. 50, at p. 4). Defendant's opposition regarding most of Plaintiff's requests is short, stating only as follows:

> Defendant variously objected to Wells' requests as vague and ambiguous, requiring disclosure of privileged information, violative of the privacy rights of other inmates, overbroad, overly burdensome, irrelevant to the claims and defense in this action, and calling for information equally available to Plaintiff, but Plaintiff does not identify any of these objections to any of his requests as unjustified. Since Plaintiff has entirely failed to meet his burden of identifying inadequate discovery responses or any basis at all for the Court to compel Defendant to provide additional responses, his motion to compel should be denied.

(Id.) (citations omitted). Notably, with the exception of documents regarding online sites used by Defendant, Defendant does not explain or attempt to justify any of her objections, or indeed address any of the substantive requests. As to the requests for documents regarding online sites and sales, Defendant asserts that "documents and photographs concerning online sales of items confiscated from inmates do not exist." (Id. at p. 5)

Defendant also refers to her assertion of the official information privilege as to some of the responsive documents.

## II. Evaluation of Defendant's Claims Regarding Privilege and Confidentiality

### a. Evaluation of Defendant's Official Information Privilege Claim

As described above, Defendant has asserted that all of the requested documents are privileged. Rather than provide any of those documents (or seek guidance from the Court),[1] Defendant served Plaintiff with two privilege logs that identified categories of documents and

---

[1] Defendant belatedly provided a copy of the privilege log to the Court pursuant to the Court's scheduling order. Defendant claimed that she did not realize she was required to do so.

asserted the following: "Official-information privilege, confidential and private information that could jeopardize the safety, security, and privacy of the prison, staff or inmates if disclosed. (Cal. Code Regs., tit. 15, §§ 3321, 3370, and 3450(d)); Civil Code §§ 1798.24 and 1798.40; California Penal Code §§ 832.7 and 832.8; California Evidence Code § 1040, et. seq., § 1043; unwarranted invasion of personal privacy Cal. Const. Art. I, § 1, (Gov. Code, § 6254); information irrelevant to any party's claim or defense." Defendant's legal position appears to amount to the following: every staff misconduct allegation, 602 grievance, incident report, rules violation report, confiscation slip, and witness account or other document generated in connection with those documents is privileged and can be withheld from discovery merely by listing it on a privilege log.

The official information privilege requires a balancing of the benefits against the harm of disclosure. *Sanchez v. City of Santa Ana* 936 F.2d 1027, 1033–1034 (9th Cir. 1990), *as amended on denial of reh'g* (Feb. 27, 1991), *as amended on denial of reh'g* (May 24, 1991) ("Federal common law recognizes a qualified privilege for official information. . . . To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery."); *Kerr v. U.S. Dist. Court for Northern Dist. of California,* 511 F.2d 192, 198 (9th Cir. 1975), *aff'd* 426 U.S. 394 (1976) ("Petitioners also contend that the common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) covers the requested documents. These cases, however, indicate that this is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken, as in this case.") (internal citations omitted).

Notwithstanding this law, which is also cited in Defendant's brief, (ECF No. 43, at p. 2), Defendant appears to have withheld every internal document without regard to its content or importance to the case. Nowhere in Defendant's briefs or supporting declarations does Defendant address the importance of the documents to Plaintiff or the merits of the case. Indeed, Defendant concedes she did not perform any balancing of interests when she states

"this Court should weigh the benefits of disclosure, if any, against the potential disadvantages." (ECF No. 43, at p. 3). Defendant's statement might make more sense if it had moved for a protective order and asked the Court's guidance as to whether a document can be properly withheld. *See* Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought may move for a protective order. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense. . . ."). But, instead, Defendant unilaterally withheld every internal CDCR document as privileged, without regard to the importance in the litigation.

Defendant's assertion of privilege is also problematic because Defendant has made no attempt to address any specific harm posed by production of the 1,213 pages of withheld documents. Notably, Defendant never contends that any specific document threatens the safety and security of the institution based on its content—for example, on the basis that it reveals a method of surveillance, or the name of an informant, or the medical information of an inmate, or any other specific safety and security interest. Instead, Defendant relies on the declaration of V. Soza for the assertion that disclosure of any and all of the withheld documents would "endanger the safety of staff and inmates." But that declaration does not address any of the documents actually withheld. For example, Soza states that "[m]aintaining the confidentiality of the investigation also protects the privacy of inmate informants." (ECF No. 38, at p. 8). But, the Court did not see any mention of an inmate informant during her *in camera* review of the withheld documents. Similarly, Soza asserts that these documents could put someone in danger of being labelled a "snitch." (Id.). But again, none of the documents appear to involve an inmate reporting on another inmate in a way that could be labelled a "snitch." Soza also asserts that the documents could reveal CDCR's investigatory techniques. But the Court saw nothing in the documents about any confidential investigatory technique, such as a surveillance or interrogation technique. Instead, they show the very basic techniques of interviewing witnesses and evaluating the evidence, which follow publicly available rules. *See, e.g.*, Cal. Code Regs., tit. 15, § 3084.7(e) ("At least one face-to-face interview shall be conducted with the appellant at the first level of review, or the second level if the first level of review is

bypassed. . . ."). Similarly, Soza claims that "[b]y maintaining the confidentiality of the investigation, witnesses are encouraged to make truthful statements, and investigators, who are assured of the confidential nature of the proceedings, are encouraged to accurately report their findings." (ECF No. 38, at p. 8). Setting aside the dubious proposition that any witness would be more inclined to lie if he or she believed his or her statement would be used in court, where the penalty of perjury applies,[2] it is difficult to see how this worry applies to grievances voluntarily filed against a staff member. Defendant's failure to address any safety and security concerns in the actual documents withheld is not compliant with the law. No case or rule entitles Defendant to withhold documents from discovery because the type of documents *could* contain sensitive information, when the documents actually withheld do not contain any such sensitive information. *See Johnson v. Sandy,* 2014 WL 4631642, at *11 (E.D. Cal., 2014) ("To the extent defendants rely on Mr. Cervantes as the official invoking the official information privilege, his claims of the privilege are insufficiently specific. His statement of the basis for the claim of privilege for internal investigative reports, inmates' appeals and staff complaints and documents revealing inmate locations are generalized in that there is no indication that he actually reviewed the specific documents sought by plaintiffs.").

Defendant's position that all documents related to investigations can be withheld from discovery, regardless of their importance to the case or specific security concerns, also ignores Supreme Court case law. In upholding the Prison Litigation Reform Act (PLRA)'s exhaustion requirement, the United States Supreme Court held that "proper exhaustion improves the quality of those prisoner suits that are eventually filed because proper exhaustion often results in the creation of an administrative record that is helpful to the court. When a grievance is filed

---

[2] *See Kelly v. City of San Jose,* 114 F.R.D. 653, 664–65 (N.D. Cal. 1987) ("Since no empirical study supports the contention that the possibility of disclosure would make officers who participate (as respondents or as investigators) in internal affairs investigations less honest it is doubly important to examine the assumptions that underlie that contention. . . . A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible. . . . Thus there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report.") (footnote omitted).

shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford v. Ngo,* 548 U.S. 81, 94–95 (2006). This passage both shows an expectation that such evidence will be provided in the normal course of litigation, and that such evidence, especially accounts from witnesses, greatly contribute to the quality of the litigation. Withholding all documents, including statements from witnesses that are made close in time to the incident, from Plaintiff as privileged is directly contrary to this holding. *See Caruso v. Solorio,* 2018 WL 2254365, at *2 (E.D. Cal. 2018) ("There was nothing legally erroneous about citing *Woodford*'s endorsement of using evidence gathered as part of the inmate grievance process in later litigation. . . . That endorsement is relevant to the balancing test in that it shows the relevance and beneficial use of evidence gathered in a prison's investigation, which should be balanced against the prison's security interests in evaluating the official information privilege. In short, it is appropriate to note that the Supreme Court has referred to the usefulness of witness statements that were generated from an investigation of a grievance.").

      Defendant's brief also asserts that all administrative grievances and staff complaints can be withheld from discovery under the official information privilege. But, the unpublished district court cases cited in support of these claims do not support any such blanket privilege. In *Gutierrez v. Gutierrez,* 1:13-cv-00421, 2015 U.S. Dist. LEXIS 163820 (E.D. Cal. Dec. 7, 2015), the Court denied a motion to compel production of staff complaints, but did so after finding that they were not sufficiently relevant, noting the legal standard "In determining what level of protection should be afforded by the official information privilege, courts conduct a case by case balancing, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." (*Id.* at *7-8). Similarly, the Court in *Lewis v. Alison*, 1:12-cv-00856, 2015 U.S. Dist. LEXIS 7449 (E.D. Cal. Jan. 22, 2015), denied a motion to compel production of certain staff complaints because they were not sufficiently relevant and "the request [was] vague, confusing, compound, overbroad and unduly burdensome." *Id.* at 6.

In conclusion, Defendant's claim that she may withhold every document regarding any grievance, confiscation slip, incident report, or investigation at the prison from discovery is not legally supported. It also makes it very difficult for this Court to weigh the competing interests involved in a proper *in camera* review. The Court wishes to be respectful and sensitive to legitimate safety and security concerns of the prison. But Defendant's submission of 1,213 pages of documents for *in camera* review, without any specific concern being raised about any specific document, is entirely unhelpful in achieving this goal. As the Court in *Kelly* explained, "[c]ourts are required to conduct case-by-case, situation specific analyses of competing interests (balancing) to determine whether to order disclosure of material that falls within the definitional reach of this privilege. That kind of analysis is impossible unless the party invoking the privilege provides the court with specific information about how disclosure of the subject material, in the situation presented by the case at hand, would harm significant law enforcement or privacy interests. . . . And because the burden of justification must be placed on the party invoking the privilege, a court that cannot conduct a meaningful balancing analysis because the government has not provided the necessary information would have no choice but to order disclosure." *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987).

Notwithstanding the generic nature of Defendant's assertion of the official information privilege, the Court has attempted to balance the interests involved in determining the scope of disclosure, alongside other issues posed by the motions to compel. But the Court may decline to do so in the future if presented with such non-specific information supporting a similar assertion of the official information privilege in the future. *Id.* at 669 ("Because so many different kinds of information could fall within the reach of this privilege there is a greater risk that it will be frequently and 'lightly' invoked. Frequent and 'light' invocations of this or any other privilege threaten both the integrity of the truth finding process and the resources of judges and plaintiffs.").

### b. Evaluation of Defendant's Confidentiality Claim

Defendant also states that she is legally required to withhold documents concerning other staff and inmates until Plaintiff obtains consent from those third parties. Defendant cites

Cal. Code Regs., tit. 15, § 3370(b), which states "Except by means of a valid authorization, subpoena, or court order, no inmate or parolee shall have access to another's case records file, unit health records, or component thereof."

As an initial matter, this issue concerns compliance with confidentiality restrictions—not a legally recognized privilege. Parties are not entitled to withhold documents on the basis of confidentiality merely by listing them on a privilege log, as Defendant has done. That is because confidential documents fall within the scope of discovery, whereas privileged documents do not. Fed. R. Civ. P. 26(b)(1) ("Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to a party's claim or defense. . . .") (emphasis added). Whereas a party may withhold a privileged document merely by producing a privilege log, *see* Fed. R. Civ. P. Rule 26(b)(5), a party seeking to withhold a confidential document must make a motion for a protective order, *see* Fed. R. Civ. P. Rule 26(c)(1) ("A party or person from whom discovery is sought may move for a protective order in the court where the action is pending. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including . . . forbidding the disclosure or discovery . . . [and] limiting the scope of disclosure of discovery to certain matters. . . ."). Thus, to raise this objection, Defendant should have moved for a protective order. This is especially true where, as here, the underlying rule does not bar discovery—it only requires a court order before doing so.

Moreover, Defendant's suggestion that the third parties have not received necessary notice by the Plaintiff does not make sense in context. (ECF No. 43, at p. 7) ("Plaintiff's request did not indicate that the third party has consented or has received notice regarding the request for their information."). After all, Plaintiff does not know the identity of the third parties who have made complaints about Defendant because Defendant has withheld such discovery. Defendant is the party who knows the third parties' identity and could have given the required notice, if it chose to do so.

Additionally, Defendant has, again, not directed this objection to any specific

document. She merely listed it among many objections to production of all 1,213 pages of documents.

That said, the Court will endeavor to balance the interests of third parties in evaluating the documents, as described below.

### III. Evaluation of Specific Requests

With these legal principles in mind, the Court has reviewed the specific requests as well as the documents provided for *in camera* review, has balanced the interests identified and discussed above, has evaluated the documents' importance to the case, and hereby makes the following order regarding the requests at issue.[3]

**Request for Admission No. 4: I do not acknowledge Native American Religious Practice as a legitimate religion.**

Defendant shall respond to this request in full to the best of her ability.

**Request for Admission No. 8: I have been suspended from duty for misconduct more than once.**

Defendant shall respond to this request, specifically limited to instances related to confiscation of inmate property or retaliation.

**Request for Admission No. 10: I have stated that Native American Inmates "Better be afraid of me."**

Defendant shall respond to this request in full, without further limitation.

---

[3] The Court need not address Defendant's boilerplate objections to Plaintiff's requests. Defendant made no attempt to justify any such objections in its opposition to the motion to compel, and merely listed them again and argued that Plaintiff had failed to show that each such objection was wrong. (ECF No. 50, at p. 4) ("Defendant variously objected to Wells' requests as vague and ambiguous, requiring disclosure of privileged information, violative of the privacy rights of other inmates, overbroad, overly burdensome, irrelevant to the claims and defenses in this action, and calling for information equally available to Plaintiff, but Plaintiff does not identify any of these objections to any of his requests as unjustified.") (citation omitted). It is well-settled that the party opposing discovery bears the burden of demonstrating why disclosure should be resisted. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). Discovery objections must be stated with specificity; boilerplate (i.e. "general") objections are highly disfavored. *See DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002)* ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.") (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). Moreover, when this Court opened discovery, it warned the parties that "Boilerplate objections are disfavored and may be summarily overruled by the Court." (ECF No. 24, at p. 2).

13

**Request No. 1: Staff misconduct reports filed against Defendant from November 2017 to present specific to reference of**

    a. **Confiscations**

    b. **Illegal searches (performed by Defendant)**

    c. **Retaliations**

    d. **Religious rights violations/claims**

    e. **Conduct beyond scope of duty**

    f. **Procedural violations**

**Request No. 2: 602 Grievances which were filed as Staff Misconducts and changed to Appeal Issue from November 2017 to Present: specifically referring to the same six categories**

**Request No. 4: Incident reports from November 2017 to present specific to Defendant.**

Regarding request numbers one, two and four, the Court orders Defendant to produce all staff misconduct reports and grievances against Defendant from November 2017 to the present made by someone other than the Plaintiff that specifically allege confiscations, illegal searches, retaliations, and religious rights violations/claims.

This order only applies to written reports of misconduct and/or the actual grievances submitted. It does not extend to any other investigation documents or the internal findings regarding such investigations. It also does not apply to the procedural documents, such as advisement of rights, related to those investigations.

To protect any privacy interests of third parties, Defendant may *partially* redact the names of the complaining inmate and any other person besides Defendant, leaving only their first and last initials. If Plaintiff later believes he needs disclosure of the full name, he may make a motion with the Court.[4]

The Court has determined that this balance will allow Plaintiff to learn about the

---

[4] At such a time, the Court will consider whether any additional notice is needed to that third party.

complaints against Defendant by other inmates during the requested time period, for their potential relevance to proving Defendant's motive, intent, plan, lack of accident, or habit. The partial redactions, with the ability to request additional information, adequately protects the privacy interests of third parties. While the additional investigation documents may have some relevance to this case, that relevance is limited where the documents do not concern an incident involving the Plaintiff and could contain sensitive information unrelated to the current lawsuit.

Additionally, although the Court did not see any such information, Defendant may redact any social security numbers or addresses.

**Request No. 3: Current lawsuit case numbers filed against defendant and causes of action.**

Defendant has provided the case numbers of three lawsuits, but has not disclosed the causes of action in those lawsuits. Defendant's objections also make it unclear whether she limited the response by time period.

The Court orders Defendant to provide a full response to the request. Defendant shall ensure that the case numbers are complete and accurate, without any limitation as to time. And Defendant shall either disclose the causes of action, or produce documents sufficient to disclose the causes of action, such as the complaints.

**Request No. 5: Confiscation slips/receipts authored by Defendant from November 2017 to Present.**

The Court appreciates Defendant's objection based on the burden involved and will not require a search for any and all confiscation slips covered by the request. That said, some confiscation slips appear in the documents submitted for *in camera* review.

Thus, to the extent that a confiscation slip has been located in connection with searches for documents in this case, including any confiscation slips in the documents provided to the Court for *in camera* review, they must be produced with names partially redacted, such that only the first and last initial of any person besides Defendant need be disclosed.

**Request Nos. 6, 7, and 8 re: online sites and sales**

Defendant has stated that there are no documents regarding online sites where

Defendant sells items confiscated from inmates, and that no relevant documents exist.

In the abundance of caution, given Defendant's objection, the Court rules as follows: Defendant must produce all documents, if any, regarding any attempt by Defendant to sell online any items confiscated from inmates.

### IV. Additional Documents Withheld

The documents submitted for *in camera* review include documents not covered by the motions to compel. The Court understands that Defendant is withholding these documents based on official information privilege and confidentiality described above, and that they are subject to some other obligation to produce, such as initial disclosures or other requests for production. The Court thus makes the following ruling regarding whether Defendant's may withhold such documents based on official information privilege or confidentiality objections.

The following documents must be produced notwithstanding Defendant's objections:

AGO 111-118

AGO 122-123, except that Defendant may redact the conclusion by the institution.

AGO 236-240

AGO 242-248

AGO 479-490

AGO 494-495, except that Defendant may partially redact the paragraphs following "Conclusion," but must produce/leave unredacted the sentence beginning "It should be noted," and ending "00230)."

Additionally, to the extent such documents exist and have not been provided or otherwise identified in this order, Defendant shall produce all witness accounts, confiscation slips, or other evidence gathered as part of any investigation into the incidents involving Plaintiff and Defendant that are at issue in this case.

### V. Conclusion

For the foregoing reasons, IT IS ORDERED that:

1. Plaintiff's Motion to Compel Response to Admissions, (ECF No. 46), and Plaintiff's Motion to Compel Production of Documents, (ECF No. 47), are

GRANTED in part and DENIED in part.
2. No later than 30 days from the date of this order, Defendant shall produce to Plaintiff:
    a. All staff misconduct reports and grievances against Defendant from November 2017 to the present made by someone other than the Plaintiff that specifically allege confiscations, illegal searches, retaliations, and religious rights violations/claims.  This order only applies to written reports of misconduct and/or the actual grievances submitted.  It does not extend to any other investigation documents or the internal findings regarding such investigations.  It also does not apply to the procedural documents, such as advisement of rights, related to those investigations.  To protect any privacy interests of third parties, Defendant may *partially* redact the names of the complaining inmate and any other person besides Defendant, leaving only their first and last initials.  If Plaintiff later believes he needs disclosure of the full name, he may make a motion with the Court.  Additionally, although the Court did not see any such information, Defendant may redact any social security numbers or addresses.
    b. A full response to Request for Production No. 3.  Defendant shall ensure that the case numbers are complete and accurate, without any limitation as to time.  And she shall either disclose the causes of action, or produce documents sufficient to disclose the causes of action, such as the complaints.
    c. Any confiscation slips by Defendant that have been or are ever located in connection with searches for documents in this case, including any confiscation slips in the documents provided to the Court for *in camera* review, with names partially redacted, such that only the first and last initials of any person besides the Defendant need be disclosed.

  d. All documents regarding any attempts by Defendant to sell online any items confiscated from inmates.

  e. A full response to Request for Admission No. 4.

  f. A response to Request for Admission No. 8, limited to instances related to confiscation of inmate property or retaliation.

  g. A full response to Request for Admission No. 10.

  h. The following documents, which were submitted to the Court for *in camera* review:

    i. AGO 111-118.

    ii. AGO 122-123, except that Defendant may redact the conclusion by the institution.

    iii. AGO 236-240.

    iv. AGO 242-248.

    v. AGO 479-490.

    vi. AGO 494-495, except that Defendant may partially redact the paragraphs following "Conclusion," but must produce/leave unredacted the sentence beginning "It should be noted," and ending "00230)."

  i. To the extent such documents exist and have not been provided or otherwise identified in this order, Defendant shall produce all witness accounts, confiscation slips, or other evidence gathered as part of any investigation into the incidents involving Plaintiff and Defendant that are at issue in this case. Defendant need not produce any internal conclusions regarding the incidents in this case, or notification or rights or similar procedural documents.

\\\
\\\
\\\

3. Defendant shall file a notice of compliance with this order once she has complied with this order.

IT IS SO ORDERED.

Dated: **August 27, 2019**

/s/ Erin P. Gross

UNITED STATES MAGISTRATE JUDGE