# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK WELLS, | Case No. 1:17-cv-01240-DAD-EPG-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO STRIKE AND GRANT *IN PART* AND DENY *IN PART* DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ROSA GONZALES, | |
| Defendant. | (ECF Nos. 58, 75) |
| | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Frank Wells ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court are Defendant's motion for summary judgment and Defendant's motion to strike unauthorized sur-replies. For the reasons described below, the undersigned recommends that the motion for summary judgment be granted in part and denied in part and the motion to strike be denied.

## I.     BACKGROUND

Plaintiff filed the Complaint commencing this action on September 15, 2017. (ECF No. 1). The undersigned screened the Complaint and found that it "stated cognizable claims against Defendant Gonzales for violation of Plaintiff's First Amendment right to free exercise of religion, violation of the Religious Land Use and Institutionalized Persons Act of 2000, retaliation in violation of the First Amendment, unreasonable searches in violation of the Fourth

Amendment, and violation of the Bane Act." (ECF No. 8 at 2).[1] The Court also recommended dismissing Plaintiff's claim for intentional infliction of emotional distress. (Id.). On July 18, 2018, the District Judge adopted the findings and recommendation. (ECF No. 10).

On July 22, 2019, Plaintiff filed a request for leave to amend and lodged a proposed First Amended Complaint. (ECF No. 48). The Court denied leave to amend on March 31, 2020. (ECF No. 91).

On September 4, 2019, Defendant Gonzales filed the instant motion for summary judgment. (ECF No. 58). Plaintiff filed an opposition and supplemental opposition, and Defendant filed a reply. (ECF Nos. 63, 68, 70). Thereafter, Plaintiff filed multiple responses to the reply, and Defendant filed a motion to strike Plaintiff's unauthorized responses. (ECF Nos. 71–73, 75). Plaintiff filed an opposition, and Defendant filed a reply. (ECF Nos. 78, 82).

## II.      FACTUAL ALLEGATIONS OF THE COMPLAINT[2]

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). The Complaint concerns events that occurred while Plaintiff was an inmate at Valley State Prison ("VSP"). On November 16, 2016, Defendant Gonzales, a correctional officer, confiscated from the Main Library, where Plaintiff works, a Native totem of spiritual significance[3] belonging to Plaintiff, which was on display for Native Heritage Month. She physically handled the artifact in a disrespectful manner, not in accordance with Native traditions and practices. Plaintiff approached his supervisor, who told him to speak directly with Defendant and her partner, Correctional Officer Lang. When Plaintiff discussed the issue with Correctional Officer Lang, he was told that he needed to speak with Gonzales because she was the one who "took your Bear." Plaintiff then tried to resolve the issue through the Men's Advisory Council.

When Plaintiff finally attempted to resolve the issue with Gonzales, she became immediately agitated and combative. She eventually asked Plaintiff "what the (expletive) do you want, and hurry up I ain't got all (expletive) day."

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.
[2] This summary of the Complaint is taken from the findings and recommendation issued on April 6, 2018. (ECF No. 8 at 3–6).
[3] The totem was in the shape of a bear carved from soap. (Wells Dep. 67).

Gonzales then ordered Plaintiff to "assume the position and proceeded to perform a body search of Plaintiff aggressively." Gonzales then ordered Plaintiff to stand with hands behind his back and again asked what Plaintiff wanted. Plaintiff requested the return of the native artifact because it was a religiously significant item as identified in the Department Operations Manual and the California Code of Regulations Title 15. Plaintiff goes on to describe more of the interaction, which ended in Gonzales threatening Plaintiff with a write-up for manipulation of staff. Plaintiff then said that he would be utilizing the appeals system to file a staff misconduct complaint. Gonzales responded "Are you threatening me? I'll write you up right now." Plaintiff asked for a "confiscation slip pursuant to policy identified within the CCR Title 15 § 3287(a)(2)," but Gonzales refused to provide one.

Plaintiff again told Gonzales that he intended to exercise his right to file a complaint against Gonzales. Gonzales replied "Do what you're [] gonna do I don't give a (expletive) cause you know I'll do what I gotta do."

Plaintiff returned to his workplace and began writing a staff misconduct complaint using form 602. A few minutes later, Gonzales entered Plaintiff's workplace and "loudly and aggressively began intimidating and threatening co-workers with punitive searches saying 'This (expletive) area is a (expletive) mess! I will be back in two (2) weeks and I'm gonna tear this (expletive) place up.'" Plaintiff was afraid that Gonzales was going to do "something bad against him." Plaintiff feared filing the complaint against Gonzales as a result of her actions. Nevertheless, Plaintiff continued to prepare his grievance.

On November 21, 2016, Plaintiff was told to go to the Main Yard gate because Gonzales wanted to speak with him. Gonzales was waiting for Plaintiff and aggressively ordered Plaintiff to "assume the position." Plaintiff was searched by Gonzales. Then Gonzales ordered Plaintiff to stand with his hands behind his back. Plaintiff was afraid and anxious. Gonzales then told Plaintiff to "drop the issue" or she would write Plaintiff up for manipulation of staff. Plaintiff responded "I requested formally through the proper procedure (form 22 inmate request) for a confiscation slip as required and that I be allowed to determine the disposition." Gonzales yelled at Plaintiff to "drop the issue." Plaintiff interpreted this comment as a threat. Plaintiff told

1  Gonzales that he had submitted the staff complaint and that he thought Gonzales was now

2  retaliating against him.

3       Approximately seven days later, Plaintiff was summoned to C-facility Program Office by

4  Captain Flores. Captain Flores had the staff complaint and told Plaintiff "Don't you think this is

5  a battle that you should [sic] be choosing?" Captain Flores also told Plaintiff that she knew about

6  Gonzales' aggressive nature that that Plaintiff should just accept it.

7       On January 25, 2017, other Native Inmates complained about Gonzales for desecrating a

8  Sacred Purification Ceremony. Plaintiff alleges this was the beginning of a pattern of harassment

9  "directed at Plaintiff's Native Culture, Spirituality, Artifacts, and Community." Plaintiff

10  attempted to file a grievance, but it was cancelled because he was not present during the incident

11  he was complaining about. Gonzales then "began maliciously accosting Natives wearing

12  traditional regalia to wit Beaded Necklaces, Headbands, Wristbands, etc… and confiscating said

13  artifacts which are authorized and protected Constitutionally." Plaintiff describes multiple other

14  incidents of confiscation of religious artifacts, harassment of Natives and other religions, and

15  retaliatory actions, including the confiscating of Eagle Feathers held by another inmate.

16       Plaintiff states that he "now suffers severe stress and fear as a result of the Defendant[']s

17  direct actions and no longer wears or displays his Native regalia (necklaces, medicine bag,

18  wristbands, headwear) in his traditional way for fear that Defendant will confiscate Spiritual

19  belongings. Plaintiff feels deprived of his right to exercise his religious practices."

20  **III.   MOTION TO STRIKE**

21       In Defendant's reply to Plaintiff's opposition to summary judgment, Defendant asserted

22  that Plaintiff failed to comply with Local Rule 260 by not reproducing the itemized facts in

23  Defendant's Statement of Undisputed Facts, admitting facts that are undisputed, and denying

24  facts that are disputed with citation to evidence in support of denial. (ECF No. 70 at 2).

25  Defendant also objected and moved to strike some of the evidence offered by Plaintiff in his

26  opposition to summary judgment. (ECF No. 70-1).

27       Thereafter, Plaintiff filed a response to Defendant's objections to the evidence offered by

28  Plaintiff in his opposition. (ECF No. 71). Plaintiff also filed a response to address the substance

1  of Defendant's reply. (ECF No. 72). Plaintiff also filed a response to Defendant's statement of

2  undisputed facts. (ECF No. 73).

3       Defendant requests the Court to strike Plaintiff's unauthorized sur-replies. (ECF No. 75).

4  Given the lack of prejudice to Defendant in allowing Plaintiff to file a sur-reply, the Court will

5  treat the sur-reply as including a request to file a sur-reply and recommend granting it *nunc pro*

6  *tunc*. Accordingly, Defendant's motion to strike should be denied.

7       **IV.    MOTION FOR SUMMARY JUDGMENT**

8       Defendant Gonzales moves for summary judgment on the entirety of the Complaint.

9  Defendant argues that the undisputed facts in this case establish that Defendant did not violate

10 Plaintiff's First Amendment right to free exercise of religion, did not violate RLUIPA, did not

11 retaliate against Plaintiff in violation of the First Amendment, did not violate Plaintiff's Fourth

12 Amendment right to freedom from unreasonable search and seizure, did not violate the Bane Act,

13 and is entitled to qualified immunity.

14       **A.  Summary Judgment Legal Standard**

15       Summary judgment is appropriate when it is demonstrated that there "is no genuine

16 dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

17 Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If

18 there is a genuine dispute about material facts, summary judgment will not be granted."). A party

19 asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of

20 materials in the record, including depositions, documents, electronically stored information,

21 affidavits or declarations, stipulations (including those made for purposes of the motion only),

22 admissions, interrogatory answers, or other materials; or showing that the materials cited do not

23 establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

24 admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

25       A party moving for summary judgment "bears the initial responsibility of informing the

26 district court of the basis for its motion, and identifying those portions of 'the pleadings,

27 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

28 any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex

1    Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party

2    moves for summary judgment on the basis that a material fact lacks any proof, the Court must

3    determine whether a fair-minded fact-finder could reasonably find for the non-moving party.

4    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of

5    evidence in support of the plaintiff's position will be insufficient; there must be evidence on

6    which the [fact-finder] could reasonably find for the plaintiff."). "[A] complete failure of proof

7    concerning an essential element of the nonmoving party's case necessarily renders all other facts

8    immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data"

9    are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th

10   Cir. 1989) (citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981)).

11          In reviewing a summary judgment motion, the Court may consider other materials in the

12   record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v.

13   San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence

14   at the summary judgment stage, the Court "must draw all reasonable inferences in the light most

15   favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo

16   Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is

17   "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need

18   not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n.2 (quoting In re

19   Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 258 (3d Cir. 1983)).

20          **B.  Objections to Evidence**

21          To the extent the Court necessarily relied on evidence that has been objected to, the Court

22   relied only on evidence it considered to be admissible. It is not the practice of the Court to rule

23   on evidentiary matters individually in the context of summary judgment.

24          **C.  Free Exercise & RLUIPA Claims**

25          Defendant Gonzales argues that there is no genuine dispute of material fact that Plaintiff

26   was not substantially burdened from practicing his religion by the confiscation of his soap bear

27   totem because Plaintiff had several additional means of observing his religious beliefs. (ECF No.

28   58-2 at 17). Defendant argues that VSP's policies and regulations furthered a compelling

government interest and were the least restrictive means of furthering that interest. (ECF No. 58-2 at 20). Defendant further argues that Plaintiff is not entitled to relief under RLUIPA because Plaintiff's claims for injunctive relief are moot because he is no longer housed at Valley State Prison and has been transferred to Mule Creek State Prison. (Id.).

       1.  Legal Standards

          **a.  Free Exercise**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (alterations in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" Jones, 791 F.3d at 1032 (quoting O'Lone, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original), supplemented, 65 F.3d 148 (9th Cir. 1995); see also Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

1       Additionally, "[a] person asserting a free exercise claim must show that the government

2  action in question substantially burdens the person's practice of her religion." Jones v. Williams,

3  791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an

4  inconvenience on religious exercise; it must have a tendency to coerce individuals into acting

5  contrary to their religious beliefs or exert substantial pressure on an adherent to modify his

6  behavior and to violate his beliefs." Id. at 1031–32 (9th Cir. 2015) (alterations in original)

7  (citation and internal quotation marks omitted).

8       **b.   RLUIPA**

9       The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

10         No government shall impose a substantial burden on the religious
           exercise of a person residing in or confined to an institution…,
11         even if the burden results from a rule of general applicability,
           unless the government demonstrates that imposition of the burden
12         on that person—

13         (1) is in furtherance of a compelling government interest; and

14         (2) is the least restrictive means of furthering that compelling
           government interest.
15

16 42 U.S.C. § 2000cc-1(a).

17      In any RLUIPA claim, one must first identify the "religious exercise" allegedly impinged

18 upon, and then must ask whether the prison regulation or action at issue "substantially burdens"

19 that religious exercise. Greene v. Solano Cty. Jail, 513 F.3d 982, 987 (9th Cir. 2008). "RLUIPA

20 does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a substantial burden on

21 religious exercise must impose a significantly great restriction or onus upon such exercise.'"

22 Hartmann, 707 F.3d at 1124–25 (citing San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d

23 1024, 1034 (9th Cir. 2004)). "Generally, the term 'substantial burden' in RLUIPA is construed in

24 light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of

25 the First Amendment prior to the Court's decision in Emp't Div. Dep't of Human Res. of Oregon

26 v. Smith, 494 U.S. 872, 878–82, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)." Int'l Church of the

27 Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011) (citing Guru

28 Nanak Sikh Society of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006)). "In the

context of a prisoner's constitutional challenge to institutional policies, this court has held that a substantial burden occurs 'where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Hartmann, 707 F.3d at 1125 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

2.  Substantial Burden

At his deposition, Plaintiff testified that he stored the soap bear totem in a Native spiritual box along with his Native headdress and other "[N]ative artifacts of spiritual significance," such as "beaded choker, beaded necklaces, rosettes, wristbands, feathers, and other hair adornments." (Wells Dep. 69:4–14). Plaintiff had religious items in his cell and was allowed to keep religious artifacts inside his locker. (Wells Dep. 75:14–23). There were also multiple catalogs available for inmates to purchase items to use to create spiritual artifacts. (Wells Dep. 75:9–13).

Plaintiff received the soap bear totem as a gift from another inmate, Larry Knight. (Wells Dep. 67:23–68:16). Knight told Plaintiff that he made the bear with prayers of Plaintiff in mind for "teachings and songs and dances" that Plaintiff had taught Knight. (Wells Dep. 72:21–23). Plaintiff explained, "This is a common practice among natives that we call gifting, also known as potlatch." (Wells Dep. 72:23–25).

During the deposition, Plaintiff stated:

> And I want to be on record as far as the deprivation in the First Amendment. As I cited earlier, potlatch is an extremely sacred part of our practices, I'll use your term, and that is the claim here of the deprivation on my part because I was deprived of being able to gift or give away to the children who needed help[4] and that, in and of itself, is what I'm claiming is the deprivation, in and of itself, as well as being deprived of the artifact in which to do so.

(Wells Dep. 77:13–21).

///

---

[4] "At the time it was the Ronald McDonald House that we were going to be donating to. They were opening up a new house for the children, and I had decided [the soap bear] would be a good piece because it had great spiritual energy and strength that would help the children in their journey to recover and heal. After the Native Heritage Month was completed, I would donate it. At the time it was on display in the library with my other native artifacts, that includes a full headdress, multiple rosettes, and beaded necklaces, wristbands, other effigies that were there, including an eagle and a wolf. None of which the defendant took and were all visible and present." (Wells Dep. 70:11–23).

1    Although Plaintiff argues that "a desecration of any aspect of his spirituality is a violation

2   of his identity," (ECF No. 63 at 24), a "substantial burden . . . place[s] more than an

3   inconvenience on religious exercise," Jones, 791 F.3d at 1031. Here, there is no genuine dispute

4   of material fact that despite confiscation of the soap bear totem, Plaintiff was in possession of

5   other spiritual artifacts and had access to multiple catalogs available to purchase items to use to

6   create spiritual artifacts. There is no evidence demonstrating that Plaintiff was unable to pray[5] or

7   to engage in potlatch, although the Court recognizes that he was not able to gift the confiscated

8   soap bear totem specifically.

9    There is also no genuine dispute of material fact that confiscation of the soap bear totem

10  did not coerce Plaintiff into acting contrary to his religious beliefs or exert substantial pressure

11  on Plaintiff to modify his behavior and to violate his beliefs. See Jones, 791 F.3d at 1031–32. In

12  the Complaint, Plaintiff states that he "now suffers severe stress and fear as a result of the

13  Defendant[']s direct actions and no longer wears or displays his Native regalia (necklaces,

14  medicine bag, wristbands, headwear) in his traditional way for fear that Defendant will

15  confiscate Spiritual belongings." (ECF No. 1 at 17–18). Plaintiff also asserts in his opposition to

16  summary judgment that Defendant's actions generated fear, which deterred Plaintiff from

17  possessing Native artifacts of spiritual significance to the point where Plaintiff sent such artifacts

18  home to preserve their sacred nature. (ECF No. 63 at 23). However, Plaintiff acknowledges that

19  he is allowed to possess Native spiritual artifacts "[a]s long as [they're] not considered a safety

20  and security issue." (Wells Dep. 74:10–11). Further, Plaintiff relies only on a self-serving

21  declaration that lacks detailed facts and supporting evidence to support these assertions (e.g., the

22  difference in how he wore or displayed his Native regalia before and after the incident, or which

23  artifacts Plaintiff in fact sent home due to his fear). See F.T.C. v. Publ'g Clearing House, Inc.,

24  104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997) ("A conclusory, self-serving

25  affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine

26  issue of material fact.").

27  _____

28  [5] At his deposition, Plaintiff answered affirmatively when asked whether he has still been able to pray after
November 16, 2016, the day that the soap bear totem was confiscated. (Wells Dep. 106:9–11).

1   Based on the foregoing, the Court finds that Defendant Gonzales has established that

2   there is no genuine dispute of material fact that Plaintiff was not substantially burdened from

3   practicing his religion by the confiscation of his soap bear totem. Therefore, the undersigned

4   recommends granting Defendant's motion for summary judgment as to the First Amendment free

5   exercise of religion claim and RLUIPA claim.[6]

6   **D. Retaliation**

7   Defendant Gonzales contends that summary judgment is appropriate "because Plaintiff

8   has no evidence that Gonzales retaliated against Plaintiff for filing a grievance against Gonzales

9   and informing Gonzales that he filed a lawsuit against her, and Gonzales' actions advanced

10   legitimate correctional goals." (ECF No. 58-2 at 21). Defendant argues that Plaintiff "lacks

11   evidence to meet two elements: a causal connection between the protected conduct and the

12   adverse action; and that the Defendant's retaliatory action did not advance legitimate correctional

13   goals." (ECF No. 58-2 at 22).

14   1. <u>Legal Standard</u>

15   The First Amendment protects a prisoner's right to seek redress of grievances from

16   prison authorities and a prisoner's right of meaningful access to the courts. <u>Jones v. Williams</u>,

17   791 F.3d 1023, 1035 (9th Cir. 2015). In the context of prisons, a First Amendment retaliation

18   claim is comprised of five basic elements: "(1) An assertion that a state actor took some adverse

19   action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action

20   (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

21   reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68

22   (9th Cir. 2005).

23   While prisoners have no freestanding right to a prison grievance process, <u>see</u> <u>Ramirez v.</u>

24   <u>Galaza</u>, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts

25   hinges on his ability to access the prison grievance system," <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279

26

---

27   [6] In light of the Court's conclusion that Plaintiff was not substantially burdened from practicing his religion, the Court declines to address whether the regulation at issue is reasonably related to legitimate penological interests, in furtherance of a compelling government interest, and the least restrictive means of furthering that compelling

28   government interest.

(9th Cir.1995) overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n.2 (2001).

Because filing administrative grievances and initiating civil litigation are protected activities, it is

impermissible for prison officials to retaliate against prisoners for engaging in these activities.

Rhodes, 408 F.3d at 567.

        2.  Analysis

        **a.  November 18, 2016 Conversation Regarding Manipulation of Staff**

        It is undisputed that Plaintiff approached Defendant Gonzales on November 18, 2016 to

informally resolve the confiscation of the soap bear totem. (ECF No. 58-3 at 4; ECF No. 73 at 4).

Although the parties characterize the subsequent conversation in contrasting terms—counseling,

informing, advising as opposed to threatening—it is undisputed that Plaintiff stated that he

intended to file a staff misconduct complaint against Defendant and that Defendant stated that if

Plaintiff continued he would be written up for manipulation of staff.[7] (ECF No. 58-3 at 4; ECF

No. 73 at 4).

        Defendant argues that summary judgment is appropriate because Plaintiff "does not have

evidence that Gonzales ever actually retaliated against him, as she has never written a CDCR

form 128A Chrono or a CDCR form 115 Serious Rules Violation Report (RVR) regarding

Plaintiff for manipulation of staff." (ECF No. 58-2 at 22). However, the Ninth Circuit has held

that "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out

because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th

Cir. 2009). "The power of a threat lies not in any negative actions eventually taken, but in the

apprehension it creates in the recipient of the threat." Id. at 1271.

        Defendant generally argues that Plaintiff lacks evidence to establish a causal connection

between the protected conduct and the adverse action. (ECF No. 58-2 at 22). "[A] plaintiff must

show that his protected conduct was 'the "substantial" or "motivating" factor behind the

defendant's conduct.'" Brodheim, 584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan,

874 F.2d 1310, 1314 (9th Cir. 1989)). "To raise a triable issue as to motive, [a plaintiff] must

---

[7] The parties do dispute whether the manipulation of staff write-up would be in the form of a counseling chrono (CDCR form 128) or a rules violation report (CDCR form 115). (ECF No. 58-3 at 4; ECF No. 73 at 4).

1   offer 'either direct evidence of retaliatory motive or at least one of three general types of

2   circumstantial evidence of such motive.'" McCollum v. California Dep't of Corr. & Rehab., 647

3   F.3d 870, 882 (9th Cir. 2011) (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

4   The three general types of circumstantial evidence include: "(1) proximity in time between

5   protected [conduct] and the alleged retaliation; (2) [that] the [defendant] expressed opposition to

6   the [protected conduct]; [or] (3) other evidence that the reasons proffered by the [defendant] for

7   the adverse . . . action were false and pretextual." McCollum, 647 F.3d at 882 (second, third, and

8   fifth alteration in original) (internal quotation marks omitted) (quoting Allen, 283 F.3d at 1077).

9        Plaintiff has put forth circumstantial evidence of retaliatory motive that, taken in the light

10   most favorable to Plaintiff, presents a genuine issue of material fact regarding the causal

11   connection between the protected conduct and the adverse action. First, the comment of a

12   manipulation of staff write-up occurred immediately after Plaintiff informed Defendant that he

13   would be writing a staff misconduct complaint against her. Second, Gonzales herself states that

14   the alleged violation of manipulation of staff was in fact the threat of filing a complaint.   (See

15   Gonzales Decl. ¶ 7, ECF No. 58-4 ("Wells' conduct would be a manipulation of staff because he

16   was threatening to '602' me [file a staff complaint] in an attempt to keep unauthorized

17   contraband, as he could not prove that the item belonged to him, and he would be avoiding the

18   rules since authorized religious items have to be processed through Receiving and Release

19   (R&R) and listed on an inmate's property card so correctional staff can verify ownership via

20   proof of purchase or documentation.")).

21        Defendant also generally argues that Plaintiff lacks evidence to establish that Defendant's

22   retaliatory action did not advance legitimate correctional goals. (ECF No. 58-2 at 22). "[P]rison

23   officials may not defeat a retaliation claim on summary judgment simply by articulating a

24   general justification for a neutral process, when there is a genuine issue of material fact as to

25   whether the action was taken in retaliation for the exercise of a constitutional right." Bruce v.

26   Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).

27        Defendant contends that "preventing contraband is a legitimate, compelling interest" and

28   that she "had legitimate penological reasons to counsel Plaintiff." (Id. at 25). There is no doubt

1    that "[c]ontrolling contraband within a prison is a legitimate penological interest." <u>Nunez v.</u>

2    <u>Duncan</u>, 591 F.3d 1217, 1228 (9th Cir. 2010). Rather, the question is whether threatening to

3    write Plaintiff up for manipulation of staff in response to Plaintiff stating that he would file a

4    staff misconduct complaint reasonably advanced the goal of controlling contraband. The Court

5    finds that it does not.  Plaintiff has a First Amendment right to file a grievance, even if the

6    subject of that grievance concerns his purported right to keep something that a prison official

7    believes is contraband.  Filing a grievance does not itself entitle him to keep the artifact.  It

8    merely provides a method to express his complaint and receive direction from the prison.  Filing

9    a grievance, or threatening to file one, is not a manipulation of staff.  It is a First Amendment

10   right.  Thus, threatening to write Plaintiff up for manipulating staff did not reasonably advance

11   the goal of controlling contraband, especially as the contraband in question (*i.e.*, the soap bear

12   totem) had already been confiscated.

13          Accordingly, the Court finds Plaintiff has put forth evidence that, taken in the light most

14   favorable to Plaintiff, presents a genuine issue of material fact regarding whether Defendant

15   Gonzales threatened to write Plaintiff up for manipulation of staff in response to Plaintiff's

16   declaration that he would file a staff misconduct complaint and whether the action did not

17   reasonably advance a legitimate correctional goal.

18                     **b.  November 18, 2016 Pat Search**

19          It is undisputed that on November 18, 2016 Defendant Gonzales conducted a pat search

20   of Plaintiff that was "not outside the procedural standard." (ECF No. 58-3 at 5; ECF No. 73 at 5).

21   It is also undisputed that the pat search occurred prior to Plaintiff and Defendant engaging in any

22   conversation regarding the soap bear totem confiscation, the staff misconduct complaint, or

23   manipulation of staff. (Wells Dep. 79:21–25).

24          Accordingly, the Court finds that Defendant Gonzales has established that there is no

25   genuine dispute of material fact that Defendant did not conduct the November 18, 2016 pat

26   search in retaliation for Plaintiff's declaration that he would file a staff misconduct complaint.

27                     **c.  November 18, Law Library Search Announcement**

28          The parties characterize the announcement in contrasting terms—informing as opposed to

threatening—but it is undisputed that on November 18, 2016, Defendant Gonzales stated to the inmates working in the law library clerk section that the area was substandard and that she would re-examine the area in two weeks. (ECF No. 58-3 at 5; ECF No. 73 at 5). It is also undisputed that the announcement occurred after Plaintiff informed Defendant that he intended to file a staff misconduct complaint against her. (Wells Dep. 86).

Defendant argues that summary judgment is appropriate because "Plaintiff does not have evidence that filing a grievance was the substantial or motivating factor behind the search, because even though Plaintiff had informed Gonzales that he intended to file a staff complaint against her, she still would have searched him, his work area, and his property, even if he had not informed her of his intentions, because it is part of Gonzales' job to regularly conduct searches for contraband and uphold security at VSP." (ECF No. 58-2 at 23).

Plaintiff has put forth circumstantial evidence of retaliatory motive that, taken in the light most favorable to Plaintiff, presents a genuine issue of material fact whether Plaintiff's intent to file a grievance was a substantial or motivating factor behind Defendant Gonzales's announcement of a law library search.  First, the announcement occurred soon after Plaintiff informed Defendant that he would be writing a staff complaint. (ECF No. 1 at 12–13; Wells Dep. 86). Second, as set forth above, Plaintiff's protected conduct would be the basis for a manipulation of staff write-up and thus, demonstrates Defendant's expressed opposition to the protected conduct.

In her declaration, Defendant Gonzales cites to title 15, California Code of Regulations section 3287(c) in support of her argument that she "informed the inmates because it is part of my job to conduct work area inspections to control contraband, recover missing or stolen property, and maintain proper security of the institution." (Gonzales Decl. ¶ 9). Although Defendant Gonzales's job responsibilities include conducting work area inspections, "prison officials may not abuse a valid procedure 'as a cover or a ruse to silence and punish' an inmate. Shepard v. Quillen, 840 F.3d 686, 694 (9th Cir. 2016) (quoting Bruce, 351 F.3d at 1289) (citing Smith v. Maschner, 899 F.2d 940, 948 (10th Cir. 1990) (holding that the "policy [against retaliation] applies even where the action taken . . . would otherwise be permissible")).

1    Section 3287(c) provides: "Inspections of inmate cell or living areas, property, work

2    areas, and body shall be conducted on an *unannounced, random* basis as directed by the

3    institution head." Cal. Code. Reg. title 15, § 3287(c) (emphasis added). Therefore, Defendant's

4    announcement of a preplanned work area inspection was in violation of regulations and for that

5    reason does not appear to advance legitimate correctional goals.

6    Accordingly, the Court finds Plaintiff has put forth evidence that, taken in the light most

7    favorable to Plaintiff, presents a genuine issue of material fact regarding whether Defendant

8    Gonzales announced a punitive search of the law library in response to Plaintiff's declaration that

9    he would file a staff misconduct complaint and whether the action did not reasonably advance a

10   legitimate correctional goal.

11                        **d.  November 21, 2016 Search and Threat**

12   Plaintiff alleges that on November 21, 2016, he was told to go to the Main Yard gate

13   because Defendant Gonzales wished to speak with him. Defendant was waiting for Plaintiff and

14   aggressively ordered Plaintiff to "assume the position." Defendant searched Plaintiff, ordered

15   Plaintiff to stand with his hands behind his back, and then told Plaintiff to "drop the issue" or she

16   would write Plaintiff up for manipulation of staff. Plaintiff responded "I requested formally

17   through the proper procedure (form 22 inmate request) for a confiscation slip as required and that

18   I be allowed to determine the disposition." Defendant yelled at Plaintiff to "drop the issue."

19   Plaintiff told Gonzales that he had submitted the staff complaint and that he thought Gonzales

20   was now retaliating against him.

21   Defendant Gonzales argues that summary judgment is appropriate because the undisputed

22   evidence (*i.e.*, Defendant's timesheet summary report) shows that she was out on vacation and

23   not at VSP on November 21, 2016. (ECF No. 58-2 at 23). In his response to Defendant's

24   statement of undisputed facts, Plaintiff disputes Defendant's declaration that she was not present

25   at VSP on November 21, 2016, relying on the statement of facts set forth in the Complaint. (ECF

26   No. 73 at 6). Plaintiff's only evidence is his deposition testimony, (Wells Dep. 85), and it is not

27   enough to create a genuine dispute of material fact regarding whether Defendant was present at

28   VSP on November 21, 2016 and conducted a retaliatory search of Plaintiff. See <u>Scott v. Harris,</u>

550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The Court considered whether the incident described by Plaintiff could have taken place on a different date. Notably, however, Plaintiff does not raise this argument in his opposition to summary judgment. On the contrary, Plaintiff asserts that Defendant Gonzales "offers [an] untruthful statement" by "say[ing] she was not present on Nov[ember] 21, 2016." (ECF No. 72 at 10).

Accordingly, the Court finds that Defendant Gonzales has established that there is no genuine dispute of material fact that Defendant did not conduct any search or issue any threat on November 21, 2016 in retaliation for Plaintiff's declaration that he would file a staff misconduct complaint.

### e. Confiscation of Other Inmates' Property

With respect to retaliation in the form of confiscation of other inmates' property, Defendant Gonzales argues that Plaintiff lacks standing to assert the legal rights of others and there is no causal connection because Defendant would have taken the same actions in the absence of the protected conduct. (ECF No. 58-2 at 24).

Here, the Court finds that Plaintiff has failed to raise a triable issue as to Defendant Gonzales's retaliatory motive regarding the confiscation of other inmates' property. Plaintiff does not offer direct evidence that Defendant Gonzales's confiscation of other inmates' property was motivated by Plaintiff's protected conduct. Plaintiff also does not offer evidence demonstrating that the reasons offered by Defendant for the confiscation of other inmates' property were false or pretextual or that her actions did not reasonably advance a legitimate correctional goal.[8] See Sealey v. Busichio, 696 F. App'x 779, 781 (9th Cir. 2017) (unpublished) ("Pure speculation, without 'any basis in personal knowledge for the plaintiff's subjective belief

---

[8] Plaintiff proffers numerous staff misconduct complaints filed by himself and other inmates regarding Defendant Gonzales's actions, including confiscation of spiritual property. However, the adjudication of said complaints conclude that Defendant Gonzales did not violate CDCR policy. (ECF No. 63 at 71, 72; ECF No. 68 at 38, 43, 49, 54, 60, 64, 74, 78, 83, 89, 92, 106, 120, 124, 129, 148, 159, 166). These complaints, which Plaintiff offers to "establish[] habit and intent," (ECF No. 68 at 10), are insufficient to create a genuine dispute of material fact.

1  about the defendant's motive' is not cognizable evidence." (quoting <u>Carmen v. S.F. Unified Sch.</u>

2  <u>Dist.</u>, 237 F.3d 1026, 1028 (9th Cir. 2001))).

3        Accordingly, the Court finds that Defendant Gonzales has established that there is no

4  genuine dispute of material fact that Defendant did not confiscate other inmates' property in

5  retaliation for Plaintiff's declaration that he would file a staff misconduct complaint.

6        3.  <u>Conclusion</u>

7        Based on the foregoing, the Court finds Plaintiff has put forth evidence that, taken in the

8  light most favorable to Plaintiff, presents genuine issues of material fact regarding whether

9  Defendant Gonzales threatened to write Plaintiff up for manipulation of staff and announced a

10  punitive search of the law library in response to Plaintiff's declaration that he would file a staff

11  complaint and that such actions did not reasonably advance a legitimate correctional goal.

12  Therefore, the undersigned recommends denying Defendant's motion for summary judgment as

13  to the First Amendment retaliation claim.

14        **E.  Fourth Amendment**

15        Defendant Gonzales argues that she did not commit an unreasonable search and seizure

16  of Plaintiff. Defendant contends that both parties agree that her pat down body search of Plaintiff

17  on November 18, 2016 was not outside the procedural standard and that it is undisputed that she

18  did not work on November 21, 2016 and did not search Plaintiff that day. (ECF No. 58-2 at 25).

19        1.  <u>Legal Standard</u>

20        The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against

21  unreasonable searches and seizures," U.S. Const. amend. IV, and the Ninth Circuit has

22  "recognized that the Fourth Amendment does apply to the invasion of bodily privacy in prisons."

23  <u>Bull v. City & Cty. Of San Francisco</u>, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc) (citing

24  <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 332 (9th Cir. 1988)). The Supreme Court has recognized

25  that the "test of reasonableness under the Fourth Amendment is not capable of precise definition

26  or mechanical application" and in the context of prisons, it requires "[b]alancing the significant

27  and legitimate security interests of the institution against the privacy interests of the inmates."

28  <u>Bell v. Wolfish</u>, 441 U.S. 520, 559, 560 (1979). In evaluating the reasonableness of a particular

1    search, the Supreme Court instructs that "[c]ourts must consider the scope of the particular

2    intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

3    which it is conducted." Id. at 559.

4            In Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010), the Ninth Circuit addressed a Fourth

5    Amendment claim regarding a visual strip search of an inmate returning from an outside work

6    detail. 591 F.3d at 1227. The Ninth Circuit rejected the plaintiff's claim that the correctional

7    officer's use of a "raffle" to select the plaintiff for the strip search was "excessive, vindictive,

8    harassing, and unrelated to any legitimate penological interest." Id. (quoting Michenfelder, 860

9    F.2d at 332). The Ninth Circuit held that whether the correctional officer targeted the plaintiff

10   "for the search for non-penological reasons is irrelevant under the Fourth Amendment" because

11   "an action is reasonable under the Fourth Amendment, regardless of the individual officer's state

12   of mind, as long as the circumstances, viewed *objectively*, justify the action." Nunez, 591 F.3d at

13   1228 (alterations and internal quotation marks omitted) (quoting Brigham City v. Stuart, 547

14   U.S. 398, 404 (2006)).

15           2.   November 18, 2016 Search

16           It is undisputed that the November 18, 2016 pat search of Plaintiff was "not outside the

17   procedural standard." (ECF No. 58-3 at 5; ECF No. 73 at 5). It is also undisputed that Plaintiff

18   and other inmates were on the Main Yard. (ECF No. 58-3 at 5; ECF No. 73 at 5). The CDCR's

19   Department Operations Manual ("DOM") provides that in non-housing areas "[r]andom or spot-

20   check inspections of inmates shall occur as a means to prevent the possession and movement of

21   unauthorized and dangerous items and substances into, out of, or within the facility." DOM

22   § 52050.16.1. "Controlling contraband within a prison is a legitimate penological interest,"

23   Nunez, 591 F.3d at 1228, and it is well established that even more invasive searches than the pat

24   search at issue here have been upheld as reasonably related to this interest. See, e.g., Bell, 441

25   U.S. at 558–60 (finding visual body cavity searches conducted after every contact visit as a

26   means of preventing possession of weapons and contraband did not violate the Fourth

27   Amendment); Bull, 595 F.3d at 966 (finding visual strip searches of all arrestees who were to be

28   introduced into general jail population for custodial housing to address a serious problem of

1   contraband smuggling did not violate the Fourth Amendment); Michenfelder, 860 F.2d at 333

2   (finding visual body cavity searches whenever inmate leaves or returns to the unit, as well as

3   when inmate travels under escort within the unit was reasonably related to legitimate penological

4   interest of preventing possession of contraband and weapons).

5        Although Plaintiff asserts that the search was conducted as a punitive measure intended

6   to embarrass, (ECF No. 63 at 12–13), the Ninth Circuit has held that whether a correctional

7   officer has targeted an inmate "for the search for non-penological reasons is irrelevant under the

8   Fourth Amendment" because "an action is reasonable under the Fourth Amendment, regardless

9   of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify

10   the action," Nunez, 591 F.3d at 1228 (alterations, internal quotation marks, and citation omitted).

11       Accordingly, the Court finds that Defendant Gonzales has established that there is no

12   genuine dispute of material fact regarding the reasonableness of the November 18, 2016 search

13   given that the search was within the procedural standard and was reasonably related to the

14   legitimate penological interest of controlling contraband within the prison.

15           3.   November 21, 2016 Search

16       As set forth in section IV(D)(2)(d), *supra*, Defendant Gonzales has established that there

17   is no genuine dispute of material fact regarding whether Defendant was present at VSP on

18   November 21, 2016 and conducted a retaliatory search of Plaintiff. The undisputed evidence (in

19   the form of Defendant's timesheet summary report) shows that she was not at VSP and was out

20   on vacation on November 21, 2016. (ECF No. 58-2 at 23). Plaintiff's allegations in the

21   Complaint and his deposition testimony are not sufficient to raise a genuine dispute of material

22   fact. See Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which

23   is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

24   not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

25       Accordingly, the Court finds that Defendant Gonzales has established there is no genuine

26   dispute of material fact regarding the nonexistence of the alleged November 21, 2016 search.

27           4.   Conclusion

28       Based on the foregoing, the Court finds that Defendant Gonzales has established that

1   there is no genuine dispute of material fact regarding the reasonableness of the November 18,

2   2016 search and the nonexistence of the alleged November 21, 2016 search. Therefore, the

3   undersigned recommends granting Defendant's motion for summary judgment as to the Fourth

4   Amendment claims.

5           **F.  Bane Act**

6           California's Bane Act provides:

7                   (a) If a person or persons, whether or not acting under color of law,
                    interferes by threat, intimidation, or coercion, or attempts to
8                   interfere by threat, intimidation, or coercion, with the exercise or
                    enjoyment by any individual or individuals of rights secured by the
9                   Constitution or laws of the United States, or of the rights secured
                    by the Constitution or laws of this state, the Attorney General, or
10                  any district attorney or city attorney may bring a civil action for
                    injunctive and other appropriate equitable relief in the name of the
11                  people of the State of California, in order to protect the peaceable
                    exercise or enjoyment of the right or rights secured. . . .
12
                    (b) Any individual whose exercise or enjoyment of rights secured
13                  by the Constitution or laws of the United States, or of rights
                    secured by the Constitution or laws of this state, has been
14                  interfered with, or attempted to be interfered with, as described in
                    subdivision (a), may institute and prosecute in his or her own name
15                  and on his or her own behalf a civil action . . . to eliminate a
                    pattern or practice of conduct as described in subdivision (a).
16

17   Cal. Civ. Code § 52.1. "The essence of such a claim is that 'the defendant, by the specified

18   improper means . . . tried to or did prevent the plaintiff from doing something he or she had the

19   right to do under the law or force the plaintiff to do something he or she was not required to do.'"

20   Boarman v. Cty. of Sacramento, 55 F. Supp. 3d 1271, 1287 (E.D. Cal. 2014) (quoting Austin B.

21   v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007)). "[T]he Bane Act does not

22   require the 'threat, intimidation or coercion' element of the claim to be transactionally

23   independent from the constitutional violation alleged." Reese v. Cty. of Sacramento, 888 F.3d

24   1030, 1043 (9th Cir. 2018) (quoting Cornell v. City & Cty. of San Francisco, 225 Cal. Rptr. 3d

25   356, 382–83 (Cal. Ct. App. 2017)).

26           Defendant Gonzales argues that summary judgment is appropriate because Plaintiff does

27   not have a constitutional or legal right to file a staff complaint to obtain contraband or a right to

28   possess unauthorized contraband and that Defendant's actions were for legitimate penological

purposes. (ECF No. 58-2 at 26). However, Plaintiff does have a constitutional right to seek redress of grievances from prison authorities. See Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015) ("The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts."); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) ("[T]he form of the complaints—even if verbal, let alone, as here, written—is of no constitutional significance, and . . . threats to sue fall within the purview of the constitutionally protected right to file grievances."). This right does not depend on whether the grievance is correct or incorrect. Even if the bear totem were contraband and Plaintiff were legally incorrect in asserting a right to the totem, (which the Court is not finding), Plaintiff would still have a right to file a grievance about it. Filing a grievance is the legal method to have claims heard by prison officials. Prisoners have a right to file them, even when prisoners are wrong in their claims.

And as noted above, Plaintiff has put forth evidence that, taken in the light most favorable to Plaintiff, presents genuine issues of material fact regarding whether Defendant Gonzales threatened to write Plaintiff up for manipulation of staff and announced a punitive search of the law library in response to Plaintiff's declaration that he would file a staff misconduct complaint and whether such actions did not reasonably advance a legitimate correctional goal. Thus, the undersigned recommends denying Defendant's motion for summary judgment as to the Bane Act claim.

### G. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231.

In determining whether an officer is entitled to qualified immunity, the Court must decide

1  (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and

2  (2) whether that right was clearly established at the time of the officer's alleged misconduct.

3  Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts are

4  "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

5  immunity analysis should be addressed first in light of the circumstances in the particular case at

6  hand." Pearson, 555 U.S. at 236. In resolving these issues, the Court must view the evidence in

7  the light most favorable to the plaintiff and resolve all material factual disputes in favor of the

8  plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

9      As set forth in section IV(D)(2), *supra*, the Court has found that Plaintiff has put forth

10  evidence that, taken in the light most favorable to Plaintiff, presents genuine issues of material

11  fact regarding whether Defendant Gonzales threatened to write Plaintiff up for manipulation of

12  staff and announced a punitive search of the law library in response to Plaintiff's declaration that

13  he would file a staff misconduct complaint and whether such actions did not reasonably advance

14  a legitimate correctional goal. Therefore, the Court will turn to whether the right at issue was

15  clearly established at the time of Defendant Gonzales's alleged misconduct.

16      Entler v. Gregoire, 872 F.3d 1031 (9th Cir. 2017), concerned retaliation against a prisoner

17  who submitted written complaints to prison officials in which he threatened to initiate civil

18  litigation if his concerns were not addressed. 872 F.3d at 1033–34. The prisoner was disciplined

19  for his threats to sue under a regulation that barred prisoners from intimidating or coercing prison

20  staff. Id. at 1034. The Ninth Circuit held that it was "clearly established when Entler filed his

21  grievances in 2012 that he had the 'constitutional right' to do that—a right that did not 'hinge on

22  the label' the prison placed on his complaints." Id. at 1041 (citations omitted). See also id. at

23  1039 ("[T]he form of the complaints—even if verbal, let alone, as here, written—is of no

24  constitutional significance, and . . . threats to sue fall within the purview of the constitutionally

25  protected right to file grievances."). The Ninth Circuit cited its decades-old precedent "in the

26  analogous Title VII retaliation context" that stated there is "no legal distinction to be made

27  between the filing of a charge which is clearly protected, and threatening to file a charge." Id. at

28  1042 (internal quotation mark omitted) (quoting Gifford v. Atchison, Topeka and Santa Fe Ry.

Co., 685 F.2d 1149, 1156 n.3 (9th Cir. 1982)). Entler also noted with approval an out-of-circuit district court case, which held that "plaintiff's conduct in threatening to file a [prisoner] complaint was protected by the First Amendment's guarantee of the right to petition the government for redress of grievance." 872 F.3d at 1042 (alteration in original) (internal quotation marks omitted) (quoting Sprau v. Coughlin, 997 F. Supp. 390 (W.D.N.Y. 1998)).

Based on the foregoing, it was clearly established in November 2016 that Plaintiff's threat to file a staff complaint against Defendant Gonzales was protected conduct. Therefore, Defendant is not entitled to qualified immunity on Plaintiff's retaliation claim.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Defendant's motion to strike (ECF No. 75) be DENIED; and

2. Defendant's motion for summary judgment (ECF No. 58) be GRANTED IN PART and DENIED IN PART;

3. Defendant Gonzales be granted summary judgment on Plaintiff's Free Exercise, RLUIPA, and Fourth Amendment claims; and

4. Defendant Gonzales be denied summary judgment on Plaintiff's First Amendment retaliation claim and Bane Act claim; and

5. Defendant Gonzales be denied qualified immunity.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **THIRTY (30) days** after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections.

\\\

\\\

1    The parties are advised that failure to file objections within the specified time may result

2    in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014)

3    (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4

     IT IS SO ORDERED.

5

6        Dated:    **May 14, 2020**                    /s/ Erica P. Grosjean

7                                                   UNITED STATES MAGISTRATE JUDGE